■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CLARENCE DE LONG, Appellant.—Judgment, Supreme Court, New York County (A. P. Williams, J.), rendered September 23, 1985, convicting defendant, after a jury trial, of criminal sale of a controlled substance in the third degree, criminal possession of a controlled substance in the third degree, and criminal possession of a controlled substance in the seventh degree, and sentencing him, as a second felony offender, to

concurrent terms of imprisonment of from 6 to 12 years, 5 to 10 years, and 1 year, respectively, reversed, on the law and as a matter of discretion in the interests of justice and the matter remanded to Supreme Court for a new trial.

The defendant was indicted, charged with the crimes of criminal sale of a controlled substance in the third degree, criminal possession of a controlled substance in the third degree, and criminal possession of a controlled substance in the seventh degree. It was alleged that an undercover police officer went to a hotel on 116th Street in Manhattan, where she asked the woman at the desk whether there were any drugs to be had. The woman stated that there were, and charged the undercover officer $1 for admission to the hotel. Inside the hotel, she walked upstairs where she allegedly saw defendant engaged in what appeared to her to be a drug transaction. She stated that she had seen the other person engaged in the transaction hand the defendant $20 and receive a glassine envelope. She approached the defendant, telling him she had been sent by the woman downstairs. A brief conversation followed. The officer testified that she handed the defendant $20 in "prerecorded buy money" and received from him an envelope containing drugs. The officer then left the hotel. She testified that the transaction had lasted approximately two minutes under "normal" lighting conditions.

After leaving the hotel, the undercover officer radioed a description of the defendant and the woman at the desk to other officers. The other officers entered the hotel immediately, found and arrested the woman at the desk, then walked through the hotel's five floors in an attempt to find the man who had sold the drugs. About 45 minutes later, while the officers were still in the lobby, the defendant walked across the .room, coming from the stairs. He was then arrested. The undercover officer saw the defendant in custody in front of the hotel and radioed to her fellow officers that they had the right person.

A search of the defendant yielded $15 in cash but no narcotics and none of the "prerecorded buy money". A search of the woman who had been at the desk yielded the prerecorded $1 bill.

The defendant testified at the trial that he had been a heroin addict for 10 years until he stopped using drugs completely in 1983. He testified that he had been convicted of more than 20 crimes, none of which involved the sale of drugs.

During the period that he had been using drugs he went to the hotel daily to "get high". He went to the hotel on the day in question to see a friend, Andrew Wilson, whom he had heard was seriously ill and whom he planned to take to the hospital. He found Wilson in a "shooting gallery". Wilson wanted to "get high" once more before going to the hospital. Defendant waited for Wilson. About 40 minutes later the police knocked on the door and asked whether there were drugs in the room. Defendant said he did not know and was taken down to the lobby. He was then arrested. The defendant maintained that he had not had any drugs on the day in question and had never sold drugs to anyone. He stated that he had not seen the undercover officer before seeing her in court at the trial.

After the conclusion of the charge the court asked for exceptions or requests. There were no exceptions to the charge and the court denied a request for a further charge made by the defendant. Thereafter, without request from any juror, the court distributed to the jurors written copies of a portion of its charge.

The trial was brief, with all of the testimony being received in less than two days. The court concluded its charge to the jury before lunch on the third day. The jurors deliberated through the afternoon. They asked to have the testimony dealing with the identification of the defendant read back to them. This was done after the jurors had their dinner and returned to the courthouse. They were sequestered for the night and, sometime during the following day, returned a verdict convicting the defendant.

Identification was the primary issue in the case. The identification of the defendant was uncorroborated by the recovery of either drugs or any of the "prerecorded buy money". The issue was vigorously contested and obviously concerned the jurors: they asked to have the identification testimony read back to them and were unable to reach a verdict in more than one day, after a trial during which the testimony was presented in less than two days.

Although defense counsel did not object to the court's submission to the jury of a written portion of its charge, we reach that issue in the interests of justice. The portion of the charge submitted to the jury in writing dealt with the indictment, the statutory elements of the crimes charged, and definitions of the terms used therein. It made no reference to any other portion of the court's oral charge, nor did it address any of the matters which might be thought to be favorable to

the defendant, such as: reasonable doubt; credibility; presumption of innocence; the fact that the indictment itself (which was included in full in the written charge) is not proof of anything. Most significant in this case, the written charge contained no mention of anything concerning identification.

In *People v Owens* (69 NY2d 585 [1987]), the Court of Appeals recognized the danger and prejudice to the defendant of a court submitting to the jury written instructions which contain only isolated portions of the oral charge. The court observed that the trial court's selection of certain portions of the charge may convey the message that these are of particular importance, and that repetition of parts of the charge might serve to emphasize those parts and subordinate others. The court further noted that written instructions might be reinforced by their physical presence in the jury room as oral instructions fade from memory. In *Owens (supra)* and its companion case, as here, the trial courts had submitted only the elements of the crimes charged and the relevant definitions. Judge Kaye, writing for the court, noted that the omission of the portions of the charge pertaining to defenses and presumption of innocence and reasonable doubt created the potential for prejudice. She concluded that the practice deprived the defendant of a fair trial and could not be considered to be harmless error.

We also find that the summation by the Assistant District Attorney in this case exceeded the bounds of propriety. Defense counsel in his summation characterized the officer's identification testimony as "an honest mistake, not a dishonest attempt to frame anyone." He further stated that "there's no reason to believe that this person [the undercover officer] was deliberately lying." Against this background, the District Attorney stated that the undercover officer: was "putting her reputation on the line"; risking "a possible perjury indictment". She asked the jury whether the undercover officer is "going to get up there and she's going to lie". And, finally she asserted: "she's not mistaken. She's not mistaken, she's got to be lying." Such comments by prosecutors have been found to be patently improper *(People v Hamilton,* 121 AD2d 176 [1st Dept 1986]; *People v Ferrara,* 78 AD2d 660 [2d Dept 1980]).

The District Attorney has conceded that the defendant's conviction of criminal possession of a controlled substance in the seventh degree was an inclusory concurrent count of criminal possession of a controlled substance in the third degree, citing *People v Holman* (117 AD2d 534 [1st Dept 1986]). Were we not remanding the case for a new trial, we

would therefore dismiss the conviction for criminal possession of a controlled substance in the seventh degree. Concur— Kupferman, J. P., Carro, Kassal and Rosenberger, JJ.